Case No. 17-3188, Flight Options, LLC and others, v. Local 1108, International Flight, Local 151st, International Flight, Local 151st, Airline 151st. Good morning. May it please the court, my name is Chris Harrison and I represent the appellants, Flight Options, Flexjet and the related carriers in this case. This case is about the union trying to use the judicial system to leverage their negotiations rather than using the dispute resolution processes that are there in the Railway Labor Act. The district court overstepped its bounds by engaging and getting involved in the party's labor dispute and trying to essentially micromanage their labor relations. Now the primary issue here is the bargaining that was going on for the 2010 collective bargaining agreement and what amendments were going to happen with that agreement. Now there were essentially two kinds of negotiations that were taking place with regard to the 2010 agreement. In November of 2014, the parties opened up what's called Section 6 negotiations and under the Railway Labor Act, when a contract in the airline industry ends, it doesn't terminate, it just continues on until it becomes amendable and then it just continues until the parties modify it. So throughout all these negotiations we're talking about, we're talking about the same contract. Essentially it just gets modified in different ways. So the parties started off in 2014 in Section 6 negotiations, met for a couple of times and then essentially put off negotiations and didn't meet for almost a year while there was some organizing activity going on. So Flight Options acquires another carrier, Flexjet, which triggers a provision in the contract that says if you acquire another carrier, you should go through this process to negotiate for what provisions of the contract are necessary to merge these two groups. And so at that point, the parties commenced what's called 1.5C4 for a merged collective bargaining agreement. Have they merged the pilots yet? I know the case kind of froze in some sense. Has it frozen all negotiations or have you accomplished merging of the pilots yet? We're almost there. Actually we did continue to negotiate and it's been exclusively really under 1.5C4 by mutual agreement of the parties. So you've been negotiating? Has the case become moot? It has not. Mercifully? No, I wish. So the parties have been negotiating 1.5C4. Section 6 is still out there. Section 6 hasn't really recommenced yet by agreement of the parties. If you complete the negotiation to integrate the pilots, then you concede that Section 6 negotiations would begin, correct? They would begin at that point. However, Judge Gwinn's finding in the injunction that's in place is not moot because we're sitting out there with an injunction against us and a finding of bad faith negotiations, which we disagree with and are asking this court to review. That's the primary piece of our case. So what that does to us is having an injunction over you and a finding of bad faith. If we get into Section 6 negotiations and the union doesn't like what's happening, they come to court not filing a petition for bad faith and an injunction, they file a motion for contempt. And that ratchets things up. Can you explain to me this language from 1.5C4? Until such time as a fully merged agreement is reached, either through bargaining or arbitration, the surviving air carrier may continue to So what do you mean by until such time as a fully merged agreement is reached? So right now, Flexjet and Flight Options are really operating as two completely separate airlines. And so there are a number of steps that have to take place before the merger happens. You have to have an integrated seniority list. Which is done? No. That actually was on appeal. The decision came back and the decision of the Court of Appeals panel was either accept this list or arbitrate the issue. So which categories in the seniority scheme remain open at this point and not satisfied? I know you said that you all have been working on the pilots and that's, if not done, close to being done. So how many other groups do you have to address in that seniority scheme? So it's just two groups of pilots. There are a number of issues that I think are still open with the integrated seniority list such as does it cause a system flush? There are some things in the contract that actually are conditions of it. And that was one of the issues we raised is Judge Gwynne said, you have to just accept the list. And we think that was a minor dispute that he erred in sort of weighing in on and weighing the language of the contract. If you could, you started out by saying the union by pushing the Section 6 approach is done fairly when it comes to these negotiations. If you could take out the possibility of anyone being accused of bad faith, take out the law for a second, minor, major, just forget all that stuff. Why as a matter of fairness does it make a difference whether you start in one place versus the other? That's a good question. So the 1.5C4 process, when we got into that, it ends in the 1.5C4 merge process ends in an interest arbitration. So you're essentially, these are complex contracts with pilots. It's not a little pamphlet. These are 300 page contracts that are very complex. When you go through any negotiation, if it ends in interest arbitration, you put your entire company in the hands of the interest arbitrator. So we thought that was pretty narrow. The union, when the union came to court, they weren't arguing there are two tracks and you ought to be doing both. They said, they were asking Judge Gwynne to interpret the contract and they argued in their December 23rd brief that we waived Section 6 altogether and that we were going to do everything. What's so unfair about starting with Section 6? Forget allegations of bad faith, just pretend to take that off the table. What's so unfair about starting with Section 6? If you do Section 6, what do you do with the language in the contract that says you have nine months to get to an MCBA where it goes to interest arbitration? You have that hanging out there. You could have done it in less than nine months. So we tried, but the problem with the negotiations was the union was making Section 6 proposals. They said, this is Section 6, everything is open in the contract. We had a follow up, just a logical point, and maybe this is bad to ask, but why can't you just sit down together and knock all this stuff out? It's as if the law has made it a lot harder to just talk about what the new deal is going to be. That really irritates me as a judge, since we're the ones who help interpret this law and it seems like it's getting in the way rather than facilitating. I think it's just, the contract sort of, what we say is a minor dispute. What does this contract mean? When you go through a merger and you're in the middle of Section 6 negotiations, what do you do? We sat down and tried to come up with a proposal on how to resolve this. The first thing we said is, let's arbitrate this issue on the front end so we know what the scope of 1.5C4 is and we can go forward and negotiate. They refused to do that. They said, no, we insist on negotiating. They made proposals like free health care with no deductible. I guess I don't see what's so unreasonable about them saying, let's not get the courts involved, let's not get arbitrators involved, let's just sit down and work this out. I get the understanding that the two mechanisms are kind of odd, but they are two different mechanisms and they end in two different ways. Section 6 for a brand new contract goes through direct negotiations, it goes through the NMB, and ultimately the pilots get to vote on it. This is something that is going to be ultimately either imposed by an arbitrator or agreed to. Everything you don't like that they can do under Section 6, they can still do if we sequence it the way you want, right? They'll still have that leverage. They'll still be able to do that, won't they? I mean, if they want to do Section 6 first and... No, I'm saying even if they do it second. Even if you follow your sequence, why can't they make the same demands at that point? They can make any demands they want. They can use the same leverage you think they have. I think the issue is, if the parties have a common understanding of what 1.5C4 is, we could have possibly reached an agreement. Because once the arbitrator actually said, this is the scope of 1.5C4, we TA'd most of the sections of the contract and got it whittled down significantly. But that issue was an impediment into what we were negotiating. Counsel, just sort of a threshold backing up question. Now that you've got it here before the court, for us looking at this, what's the standard that we ought to be using? Because it sounds like you've talked about questions of law, and then when you get into your pleadings, you're asking us to actually go back and look at and parse some of this language, which raises a specter of questions of fact. So is this a legal question you're presenting to us? Is it a factual one? Is it a mixed one? What's the standard we ought to be using when trying to resolve this, if we end up resolving it and you decide that you can't? So I'm certainly not asking this court to interpret language of the contract. What I'm saying is, Judge Gwynne weighed in on what are minor disputes. He also imposed on us an obligation under Section 6, because Judge Gwynne read it and said, he did something that neither side asked him to do. He said... We review what he did de novo? I'm sorry? We review what he did de novo? It is, because it's... Is that the answer to the question? It is. It is. It's a question of law. One of the big issues here is he completely ignored, and the union completely ignored, the Norris LaGuardia Act. The union has to come in and establish a couple of different things when they come in to bring and seek an injunction for a labor relations issue. And under the Norris LaGuardia Act, they have to show that they have clean hands, that they've exerted every reasonable effort to resolve this, and that they've used all the mechanisms available to do that. Essentially, this got brought in for an injunction when those who have bad faith and those kinds of injunctions happen at the end when the parties have been indirect, they've been to the NMB, they're at the very, very end of their rope. They never asked for the intervention of the National Mediation Board. If they didn't like how Section 6 was going, your next step is to go to the National Mediation Board, not to go to a federal judge and say, So the Norris LaGuardia Act, we say, is a jurisdictional issue. It says it in the language of the statute itself. We think that Norris LaGuardia is jurisdictional. The union did not plead any facts that established that they satisfied Norris LaGuardia, and Judge Gwynne made no findings at all. In fact, I think it's telling he didn't even address the bond issue until we raised it after the fact. So I think the Norris LaGuardia presents a jurisdictional bar for this. And then under the Railway Labor Act, if you look at the merits of the issue itself, they should have taken this to an arbitration. They could have taken it to the National Mediation Board. Whether it's a major or a minor dispute, they had mechanisms to resolve the issue. And they didn't use them, they just went to court. I think we understand your argument. Thanks so much. Thank you. Mr. Petroff. Thank you, Your Honor. May it please the Court, my name is James Petroff for the International Brotherhood of Teamsters and Teamsters 1108, the pilots union here. I think the central issue in the case is, did the company make every reasonable effort to settle the contract with the union? And the answer to that is no. Instead, it just wanted to go to arbitration, and that's all they were proposed to do. Instead of bargaining as required by the express language of Section 2-1st of the Railway Labor Act. And when I use that language, every reasonable effort to settle, okay, settle the contract with the union, sit down. That's what the statute says. What's it matter to you whether you do Section 6 after you've integrated and handled the merger first? What's it matter to you in terms of fairness? Forget the leverage that this or that law gives you. Just as a matter of fairness in terms of reaching agreement. We have always wanted the employer to deal with us, sit down and deal with us. That has to happen in integrating them. Section 6, right? No, no, I get it, but I'm trying to figure out what's unfair about the sequence they're preferring. I asked them what was unfair about the sequence you're preferring. Now I want to hear what you say is unfair about the sequence they're proposing. The cornerstone of the National Railway Labor Act is bargaining with the union face-to-face and having good faith bargaining. The unfairness is not following the statutes the way you think they work. Well, sitting as equals at the table and then having our members under Section 6 being able to ratify and vote on the contract. Under their scenario, they go to arbitration and our members don't ratify the contract. Our pilots have a voice in the workplace, and all we wanted to do was settle the contract, which is absolutely a pillar of the Railway Labor Act. It's what we're here for about today. Again, to go back to Judge Sutton's question and just follow up, what they're proposing, as I understand it, and tell me if I'm wrong, is let's integrate all the pilots before we negotiate the terms versus half the pilots here and half the pilots there. And so I understand what you're saying, and I don't disagree with you. I mean, the first thing they said is let's go arbitrate. And I agree with you. You two should sit down and hammer this out as a practical and just a normal human being matter. But what's wrong with putting all the pilots under the agreement before you negotiate pay, health care, all those other things? As a practical matter, we can settle all that issue in Section 6 negotiations. It's not something that the contract requires us to stave off Section 6 negotiations and try to settle the contract and have this integration agreement first. It's not required. I want to say something. But Section 1.5 does talk about merger. It does. But, Your Honor, I have to make a couple appellate practice arguments for you because you really need to know this. With respect to this argument, because this was raised, some of these issues have been raised in the last, but we haven't had an opportunity to respond. And they deal with waiver of the arguments that they're presenting here. I'll help you with the appellate practice. It's called forfeiture, not waiver. Okay. Thank you. You were going to tell us how to do appellate practice. I thought I'd let you know that. I'm just characterizing as that, Your Honor, which is with respect to the bringing up the issue of whether the contract is a minor dispute because they had an implied right under 1.5C4, which is what you're talking about. That argument there was never raised in the trial court, and therefore they forfeited that on appeal. That's their argument as to a minor dispute in the trial court. They argued for... Just to make sure I'm getting something, you say you're responding to an argument they raised for the first time in the reply brief on appeal? Yes. Yes, on the last sentence of the reply brief, and also in their supplemental letter. What is that argument I'm not following? Okay. In the trial court, the court said, the company argued that they had bargained in good faith under Section 6, and that they did bargain under Section 6. The only thing that they did do was they prioritized this because we didn't have enough time in five months to negotiate, which is a factual type of question. And they said the thing that complicated negotiations was the scope dispute that you have here under 1.5C4. The union thought that 1.5C4, we could do a lot of different issues in there, and the company said no, there was only six issues. That was their argument there. They never raised as a minor dispute that there's an implied term in the contract, an implied term in 1.5C4, that the union has waived its right to bargain. You see? And that they... I'm getting the stakes of what you're saying. I mean, the main point here is how you sequence this. If they're right that you sequence by starting with the 1.5, why does the point you're making matter? Well, it's absolutely critical, and it ties into your Msweiler analysis that you talked about before in the supplemental letter brief. If they fail to raise this issue on an implied section of the contract, then it's waived on appeal. Msweiler says this is not a matter of subject matter jurisdiction, so if you raise a minor dispute argument, you can't... If it's subject matter jurisdiction, you could raise it any time. He could... My colleague could stand up here and say, oh, yeah, I have another theory about minor dispute. But that's not the case, and this court has said that you have to consider a minor dispute that the court has federal jurisdiction over the minor dispute and to look at the...peek at the merits, and that's what Judge Gwinn did as they asked him. They never made the argument that they're making here in their reply brief and in their supplemental brief. Never did. Never cited ABX error. So that's a waiver. The other thing we'd ask you to as a matter of appellate practice is, for the court, they are citing an arbitration transcript with respect to their corrected letter brief in 27.1, 27.2. That's a matter outside the record on appeal, and it should not be considered at all, and we don't think the arbitrator's ambiguous comments can prove anything in this case. With respect to... This is another appellate practice-type issue, which is the idea of mediation, that you have to go to the National Mediation Board, which my colleague has just raised. That was raised, I believe, for the first time in the supplemental letter brief that you asked for. Can I go back to just... I'm still not following. What is the harm? I apologize if you've answered this, but what is the harm in integrating all the pilots before you get to Section 6? What is the harm to you? Well, certainly, we could have done that in Section 6, integrating all the pilots, settle the contract. The harm to us in going to negotiation, one of the big things here is absolute tremendous delay. And as we have gone throughout both of these appeals, we've got two federal court injunctions against the company for trying to delay. First, they tried to delay... Just so you... I'm getting this point. The answer is that if you do it under Section 6, there's less risk of delay than if you do it under Section 1.5? Is that the point you're making? The theory under Section 6 is that the company and the union both come together in good faith and try to reach an agreement. I thought they said that they only have nine months under 1.5. So that would seem to be a quicker timeline. Sure. I don't understand your answer to Judge Thapar's question then. I'm sorry? His question was, what's the harm of integrating first under Section 1.5? And you invoked delay, and Judge Thapar just pointed out that they said under 1.5 you have to do it in less than nine months. So I'm just not processing your answer. You know, I guess the question is, integration first versus having Section 6 later. The way that the union has always felt is that the arbitration process that they had proposed, we wanted to avoid that. Again, we wanted to avoid it so that our members could vote on the contract and so the company could not delay and have a long and arduous... So the arbitration would only be about the integration, correct? Right. That's it. And so what you're saying is under 1.5 they can compel arbitration, whereas under Section 6 it would be harder for them. I'm trying to understand... No, no, no. Under Section 6 of the Railway Labor Act, they have to sit down and talk to us about all of the terms of the contract that we want. And they have to bargain in good faith with us, try to reach an agreement. The process for Section 6 is you go to mediation. If you don't have a dispute, you have a presidential emergency board you can ultimately strike. Okay? That's a separate process than this one. This process here has to do with arbitration of an integrated agreement. And in that context, the company here had six issues that they identified for Judge Gwinn that were 1.5C4 merger issues. The rest of everything else is Section 6, and that's what we wanted to bargain with. So let's tell them. Maybe this is another way to come at this problem. You have, hypothetically, you do the Section 1.5 integration first. And there's six things on the table. Five of them you get just what you want, and one you're really unhappy about. Okay? Now we move to Section 6. Why under Section 6 aren't you allowed to get that one thing you didn't like in the Section 1.5 negotiations or integration revisited in the Section 6 process? That's true. Okay. Absolutely. What are we doing? Okay, so here, with respect to a refusal to bargain charge, which ---- It's all about the leverage then. It's all about where you are in terms of what the different statutes do in terms of giving one side a little more leverage than the other. That must be what it's about. No, no, no, no. What this is about, Your Honor, is negotiating under Section 6. They have the obligation of good faith. But you know what ---- If they do what they did, which is a factual question, sit there and not propose a single article of the contract, to settle the contract, which is their obligation under ---- We can't negotiate. This injunction makes them sit with us and try to bargain. Why can't you get the same injunction after you integrate and it's time to do the Section 6 work? Well ---- Why won't you be in the exact same position then as you are now? The only argument that they have made, and it's kind of an argument what you're raising, Your Honor, which is the remedy for the union is to negotiate. Just keep negotiating. And what Judge Gwynne said in this case was they failed to negotiate. They're just sitting there and wasting their time. Counsel, I still ---- And I'm actually waiting to hear the answer to Judge Sutton's question, which is why wouldn't you be in the same position then? And I understand what you're arguing, but I really would like to hear the answer to that. Why wouldn't you be in the same position? Get Judge Gwynne to issue the same injunction then that he issued now. After integration.  Well, in this ---- You'll still get what you want. Well, in this context, we wanted to settle the contract. They refused to bargain with us, and we obtained an order to require them. Bingo, do the exact same thing after the Section 1.5 integration. It worked pretty well this time. Why won't it work well next time? Only ---- It's even better for you. You'll know what you lost in the Section 1.5, and you can revisit the dangling number six item you didn't like and get it fixed. I would submit the only reason that we have ever reached any agreements with the employer is Judge Gwynne's order. This is the second time we've been ---- Do you realize you could have, I mean, right, by the process laid out in the agreements, if you didn't get the courts involved, you could have by now arbitrated, integrated, and gotten to the Section 6. We could be sitting here. You've had two appeals. You've been in the trial court twice. You all could be well down the road. We could be talking about a Section 6 injunction at this point. Right. We'd be reviewing what Judge Gwynne had done and enjoining them to bargain just what he did last time, but after you'd done the integration. In the context of this case, what we've argued, and Judge Gwynne recognized this on page 1787 of his order, or the transcript. They can't frustrate the bargaining buy-in. It sounds like there's some evidence that the company is playing games with trying to know, play this out to decertify the union, which apparently from past hearings, it sounds like the company mistakenly believed that they're going to win the representation election, somewhat akin to what this country as a whole thought before the November election, but they lost that. They're in the same ways like Clinton. They lose the election that they thought they'd win, and is it the remedy of that that they buck up and live with it? You know what it sounds like to me? It sounds like the company and union are having a turf fight at the pilot's expense because this could all be done, it sounds like, and you all just can't sit down and agree on anything. I mean, it doesn't matter. The courts can order you to sit together all you like, but it's like two kids fighting, and we're trying to pull you apart and get you to do something you won't, either side. I mean, I don't understand why you can't just integrate the pilots and then move on to the Section 6. Well, I submit that if you simply say that because we have an arbitration clause in the contract regarding one thing, that that automatically waives the Section 6 right to bargain under the Railway Labor Act, that's a thunderbolt. But why would it waive it? It doesn't waive anything. It just says, here's an orderly process, do this, then do this. That's not waiver. Well, you know, Judge Gwynne was absolutely correct, I submit, Your Honors, that the statute itself, both in Section 152 first and also in Section 6 itself, says that you file a request to bargain with the company, a notice, and they have an immediate obligation after 30 days to sit down and negotiate a contract over the entire contract. And that's what we did, and we tried to settle. I haven't really seen any case. I see your red light's on, so thank you. Okay, thank you. Thanks so much. Appreciate it. Mr. Harrison, I think you have three minutes of rebuttal. So I actually did raise the minor dispute issue in the trial court. It's on page ID 1766 in the transcript, so I raised that issue with Judge Gwynne. One of the interesting things, I think, is that the arbitrator, so the proposals we made in the fall of 2000 What's your response to the point that, okay, you quote Gwynne. The sequencing is you do the Section 1.5 integration first. Aren't they allowed, when it comes to Section 6 renegotiations, to refight some of those fights? Absolutely. But the issue we have and the reason we're here today is Judge Gwynne issued an injunction with an underlying finding of bad faith against us. So we will start in Section 6 negotiations under an injunction at the beginning. So it's just a bad faith finding that you believe complicates this because, once again, with that finding, it puts you and your parties at a disadvantage in the negotiations? Which is not appropriate under the law because we didn't violate. I mean, we haven't gotten to that issue, but we didn't violate Section 2 first in the negotiations. The interesting thing is, so what Judge Gwynne made note If we put you all in the sequence you want, are you going to sit down and hammer this out, or are we going to see you a third time? So we're not asking you to put us in the sequence we want or to say it's got to be any particular sequence. The parties have actually resolved that issue. The parties went to arbitration. We agreed, and I think I put this in our supplemental brief, we agreed to bifurcate the issue. Does the union know that you all have resolved that issue? Yeah. It doesn't sound like they do. Wait, what do you mean the Section 1.5 integration is done? It is at the very, very end. It's almost all the way through, and we negotiated and agreed on two-thirds of the provisions of the contract. We negotiated. We agreed. We did what we were supposed to do in 1.5C4. The fault we have, and Judge Gwynne did not fault us for bad faith negotiations.  He faulted us for the sequence. So whatever we do, you're going to be done with the 1.5C4 event soon, and you're going to move on to Section 6 with the union negotiations? Absolutely. Yes. The arbitration is almost awarded. It's probably coming out within the next week or two. So that's going to be done. We'll start in Section 6. But what we're saying is we're kneecapped essentially by a ruling that we've engaged in bad faith. Judge Gwynne made no factual findings that we did surface bargaining. He made no factual findings that deal with the issue of bad faith itself. His fault was that we prioritized 1.5C4, that we were arguing for a sequence. That's the only fault he found, and under that circumstance, he said, you're engaged in bad faith under 2 first, which is absurd. We had no choice because we had such a short window. What would he have said if he'd learned that the union was okay with doing Section 1.5 first, which is what ended up happening? Wouldn't he have withdrawn the bad faith? I think so. Why didn't you tell him? We did. We said, Your Honor, we're going next month to the arbitrator to decide that issue. Did you ask him to withdraw the bad faith finding? Post-injunction? Yes. We haven't been back to him post-injunction to deal with that. We told him on the front end. All right. We told him this is all getting resolved. The longer this goes on, the less I think we have to do in this case. Which makes me very inclined to go on for a lot longer, but I'm not going to do that. So if you have one sentence to summarize, you can do it, but without too many dependent clauses. The issue is we should not be under a bad faith injunction going into Section 6 negotiations. Highly inappropriate. Thanks to both of you for the oral arguments. Thanks for answering our questions, which we really appreciate. And thanks for your helpful briefs. Thanks so much. The case will be submitted.